CLERK'S OFFICE U.S. DIST. COU
AT ROANOKE, VA
FILED

SEP 09 2014

JULIA C DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PAULA KAYE GALLATIN, ) | Civil Action No. 7:13CV00183 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | By:  Hon. Glen E. Conrad |
| ) | Chief United States District Judge |
| Defendant. ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for a period of disability and disability insurance benefits ("DIB") under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir.1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Paula Gallatin, was born on May 30, 1965. Ms. Gallatin has a GED and also has taken some college courses. (TR 31-32). Plaintiff previously worked as a welder until she injured her back, as a bus driver "off and on," most recently in 2005, and she was last employed in 2009 as a cashier and office assistant at a grocery store.

On March 23, 2010, Ms. Gallatin filed an application for a period of disability and DIB.[1] She alleged that she became disabled for all forms of substantial gainful employment on July 1, 2009. She further alleges that she remains disabled through the present, although she agrees with the ALJ that she last met the insured status requirements of the Act on September 30, 2010. Consequently, plaintiff is entitled to DIB only if she has established that she became disabled within the meaning of the Act on or before September 30, 2010.[2] See generally 42 U.S.C. § 423(a).

Ms. Gallatin's claim was denied upon initial consideration and reconsideration. She then requested. She received a de novo hearing and review before an Administrative Law Judge ("ALJ"). In her April 12, 2012 decision, the ALJ determined that Ms. Gallatin is not disabled. The ALJ found that, through the date last insured, plaintiff suffered from severe impairments including degenerative disc disease of the lumbar spine, complications from gastric bypass surgery, and anemia. The ALJ specifically addressed Gallatin's impairment of depression, but found that it did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore non-severe. Nonetheless, because of her impairments, the ALJ ruled that Ms. Gallatin was disabled for her past relevant work activities. However, the ALJ held that, at all relevant times prior to termination of insured status, plaintiff possessed sufficient functional capacity to engage in alternate work activity. The ALJ assessed Ms. Gallatin's

---

[1] Although plaintiff's brief to the court indicates that she also applied for supplemental security income ("SSI"), see Dkt. No. 15 at 1-2, the administrative record does not reflect any application for SSI, and the ALJ did not address one.

[2] To qualify for DIB, Ms. Gallatin has to prove that she became disabled between her alleged onset date and the date she was last insured for DIB purposes. See Johnson v. Barnhart, 434 F.3d 650, 655–56 (4th Cir. 2005). Medical records after the date last insured may be relevant to the DIB determination, if they "relate back to the period when plaintiff was insured and provide evidence of plaintiff's impairments at that time." Bishop v. Astrue, 2012 WL 951775, at *4 (D.S.C. March 20, 2012) (citing Johnson, 434 F.3d at 655–56).

2

residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could have lifted up to 10 pounds frequently and 20 pounds occasionally, and pushing and pulling in her bilateral lower extremities was limited to the lift/carry amount. The claimant could not more than occasionally kneel, crawl, crouch, stoop, balance, or climb ramps or stairs. She could not have worked around heights, hazards, or climbed ladders, ropes, and scaffolds.

(TR 31). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the ALJ concluded that Ms. Gallatin retained sufficient functional capacity to perform several specific sedentary work roles existing in significant number in the national economy, such as telephone sales and parts polisher. (TR 21). Accordingly, the ALJ determined that she is not entitled to a period of disability or DIB. See generally, 20 C.F.R. §§ 404.1520(g). The ALJ's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Gallatin has now appealed to this court. She and the Commissioner have filed motions for summary judgment, and both have informed chambers that they waive oral argument.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438

3
Case 7:13-cv-00183-GEC   Document 23   Filed 09/09/14   Page 3 of 9   Pageid#: 714

F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. Ms. Gallatin has a history of back pain, since she suffered a fall in approximately 1995. She has sought treatment from her primary care physician, Dr. Wilson, for back pain since at least April 2009. Generally, Dr. Wilson prescribed Lortab for the pain. Dr. Wilson also referred Ms. Gallatin to an orthopedist in February 2010, who gave Ms. Gallatin an epidural steroid injection, which did little to alleviate Ms. Gallatin's symptoms. She continued to complain of back pain and, in May 2010, underwent a fusion at L4-L5 with Dr. Reibel. In three post-operation visits, she reported decreased pain, said she had no problems with falling, and further reported that her strength was improving and that she no longer needed a cane. Overall, the records reflect that she was doing "pretty well," although she continued to take Lortab for back pain during this period.

Ms. Gallatin also has a history of anemia, which has been treated with blood transfusions or iron transfusions. As noted by the ALJ, the medical records reflect that the transfusions greatly helped. For example, in January 2010, after a transfusion in November 2009, she reported that she was "feeling better" and that her "[e]nergy levels [were] better." (TR 600). As the ALJ noted, she had no complaints of anemia-related symptoms from that time until 2011, after her date last insured. She received another transfusion in June 2011—more than eighteen months after her previous one—and again, showed good improvement from that infusion as of October 2011. (TR 595-96). Thus, there is some evidence to support the ALJ's determinations that her "anemia-related symptoms improved substantially after she began iron injections," as well as the ALJ's conclusion that although she may have temporarily been unable to work, her symptoms did not preclude her from working for the required twelve-month period. (TR 18).

Finally, Ms. Gallatin has been treated for depression, almost exclusively with medication and some therapy. She received only limited treatment during the relevant period, as the ALJ noted. Based on this, the ALJ found her depression to be non-severe, after considering the four "paragraph B" criteria. (TR 14). Ms. Gallatin does not expressly challenge the finding that her depression was non-severe; she simply claims that when it is considered with her other limitations, she is disabled.

On appeal to this court, plaintiff's primary argument is that the ALJ erred in not giving great weight to the opinion of her treating physician, Dr. Wilson. She argues that Dr. Wilson's statement that she could not work in February 2010 is supported by her own allegations of her limitations, including the fact that she was terminated from her last job in 2009 because she would miss too many days of work. She contends her cumulative physical and mental conditions render her disabled. She notes that Dr. Wilson referred plaintiff to a neurosurgeon and to a specialist for her anemia during her alleged period of disability, thereby showing that Dr. Wilson believed Ms. Gallatin's problems were severe.

The "opinion" on which Ms. Gallatin relies is set forth in a letter from Dr. Wilson dated February 26, 2010 and addressed "To Whom It May Concern." In it, Dr. Wilson explains that Ms. Gallatin is under her care, references Ms. Gallatin's back pain, her recent MRI revealing ruptured discs, and her anemia. She states that Ms. Gallatin "has been unable to work due to incapacitating problems." (TR 312).

The ALJ expressly considered Dr. Wilson's letter, and explained why it did not lead to a conclusion that Ms. Gallatin was disabled:

> Statements that a claimant is "disabled," "unable to work," or cannot perform a past job are not medical opinions, but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such

> issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved for the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (20 CFR 404. 1427(d)(2) and 416.927(d)(2); SSR 96-5p[3]).
>
> In February 2010, Dr. Wilson stated that the claimant was unable to work due to her back pain and anemia. She did not mention the claimant's mental impairments. (Exhibit 4F) Her opinion is given little weight because the determination of disability is reserved to the Commissioner. Also, she did not support her opinion with statements about the claimant's functional limitations, and the medical evidence of record does not support a finding of disabled. Additionally, Dr. Wilson's opinion does not claim that the claimant was unable to work for at least 12 months, and it only pertains to the time Dr. Wilson wrote it.

(TR 19).

A treating physician's medical opinion is entitled to controlling weight only where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence" of record. 20 C.F.R. § 404.1526(c)(2); Hunter v. Sullivan, 993 F.3d 31, 35 (4th Cir. 1992). Thus, where there is "persuasive contrary evidence," Hines v. Barnhart, 453 F.3d 559, 563 & n.2 (4th Cir. 2006) (quoting Hunter, 933 F.2d at 35), or where the treating physician's opinion is not supported or is otherwise inconsistent with the record, "it should be accorded significantly less weight." Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996). If an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must "give good reasons" for that decision. See 20 C.F.R. §§ 404.1527(d)(2).

Here, the court concludes that substantial evidence supports the ALJ's decision not to give controlling weight to Dr. Wilson's statement that plaintiff could not work. In particular, Dr.

---
[3] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citation omitted).

Wilson did not identify any specific functional limitations nor did she indicate that Ms. Gallatin had been unable to work (or would be unable to work) for any period of twelve months, as required to find her disabled under the Act. See 42 U.S.C. § 423(a). Moreover, as discussed above, the record supports that Ms. Gallatin's back pain was largely resolved with her surgery and that her anemia was successfully treated with periodic infusions. Indeed, Dr. Wilson's own notes in February and April 2010 reflect that Ms. Gallatin's anemia was improved. In short, Dr. Wilson's opinion, particularly when contrasted with the other evidence of record, does not direct a finding of disability. The ALJ's conclusion to that effect is supported by substantial evidence.

Furthermore, even if Dr. Wilson's opinion could support a finding that Ms. Gallatin's conditions precluded her from working at any job as of February 2010, she had back surgery in May 2010 and by August 2010, her back problems had improved significantly. For example, on August 25, 2010, she had her third post-operative visit in which she was determined to be doing "pretty well" and to have a good range of motion other than tight hamstrings. (TR. 409-411). Thus, substantial evidence supports the ALJ's conclusion that plaintiff has not established any period of disability of requisite duration.

Plaintiff also contends that the ALJ erred in discounting her testimony concerning the severity and debilitating effects of her pain. She refers to her testimony that she cannot stand in place for longer than fifteen minutes, that she must shift positions in her chair when sitting for prolonged periods, and that she cannot do chores that require bending. She also testified that she had problems sleeping and that she was depressed and took Celexa for her depression.

It is the ALJ's duty to resolves inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Thus, Ms. Gallatin's subjective complaints of disabling symptoms are not conclusive. Rather, the ALJ must

examine all of the evidence, including the objective medical record, and determine whether Ms. Gallatin has met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her symptoms as alleged. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). This assessment requires the ALJ to evaluate the intensity and persistence of Ms. Gallatin's claimed symptoms and the effect those disabling conditions have on her ability to work. Id. at 594–95. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)

The ALJ here expressly found that Ms. Gallatin's statements concerning the debilitating effects of her impairments were not credible to the extent they differed from the ALJ's residual functional capacity conclusions. In making that determination, the ALJ both analyzed the medical records and discussed the fact that much of the treatment Ms. Gallatin had received successfully alleviated many of her symptoms. The ALJ also noted that there were various instances in the record, in her reports to physicians, and even in her testimony at the hearing before the ALJ, in which Ms. Gallatin described doing a number of activities that are inconsistent with the limitations she claimed at the hearing. These are valid factors for the ALJ to consider when determining credibility, and the court will not disturb the ALJ's credibility findings. See Shively, 739 F.2d at 989-90.

In affirming the final decision of the Commissioner, the court does not suggest that Ms. Gallatin is free of all pain, discomfort, and depression. Indeed, the medical record confirms that plaintiff suffers from several serious problems which can be expected to result in many subjective complaints, as described by Ms. Gallatin. However, the medical record reflects that, when properly treated, plaintiff has experienced some improvement in her symptoms. It must be

recognized that the inability to do work without any subjective discomfort does not of itself render a claimant totally disabled. Craig, 76 F.3d at 594-95. It appears to the court that the ALJ considered all of the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claims for benefits. Indeed, the court believes that the ALJ gave Ms. Gallatin some credit in assessing her residual functional capacity and, in particular, in limiting her to sedentary work. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The Clerk is directed to send copies of this opinion to all counsel of record.

ENTER: This 9th day of September, 2014.

/s/ Glen Conrad

Chief United States District Judge